IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:25-CV-205-FL

| | | |
|---|---|---|
| ANNA RHODES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| NAVY FEDERAL CREDIT UNION, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on plaintiff's motion to remand (DE 16) and defendant's motion to dismiss for failure to state a claim (DE 13). The motions have been briefed fully, and in this posture the issues raised are ripe for ruling. For the following reasons, plaintiff's motion is denied and defendant's motion is granted.

## STATEMENT OF THE CASE

Plaintiff, proceeding pro se, commenced this action in Cumberland County Superior Court March 18, 2025, asserting the following claims: 1) unfair and deceptive trade practices in violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, ("UDTPA"); 2) violation of North Carolina's Telephone Solicitation Act, id. § 75-102; 3) "credit reporting abuse," under N.C. Gen. Stat. § 75-61; 4) "unlawful account closure," under N.C. Gen. Stat. § 53-176; 5) "financial privacy violation," under N.C. Gen. Stat. § 75-65; and 6) intentional infliction of emotional distress under state common law. (Compl. (DE 1-1) at 4-5).[1] She seeks

---

[1]    Unless otherwise specified, page numbers in citations to the record in this order refer to the page number of the document designated in the court's case management and electronic case filing (CM/ECF) system, and not to page numbering, if any, specified on the face of the underlying document.

injective relief, compensatory and punitive damages, attorneys' fees, and costs.

Defendant filed notice of removal April 21, 2025, asserting diversity jurisdiction and accompanied by state court filings. (DE 1, 1-1). Plaintiff filed initial motion to remand April 23, 2025, asserting procedural defects and lack of diversity jurisdiction. (DE 6). Following April 21, 2025, notice by the clerk of defendant's failure to file civil cover sheet and supplemental removal cover sheet, as required by Local Civil Rule 5.3(a)(1), defendant filed such documents April 29, 2025. (See DE 9, 11). Defendant filed the instant motion to dismiss the same day.[2]

Plaintiff filed May 1, 2025, the instant amended motion to remand for lack of subject matter jurisdiction and procedural defects, combined with her opposition to defendant's motion. (DE 16). Defendant responded, and plaintiff replied.

## STATEMENT OF FACTS

Although not a model of clarity, the facts alleged in the complaint may be summarized as follows. From January 2020 through February 2022, defendant mailed plaintiff commercial solicitations which did not state "THIS IS A SOLICITATION" on the exterior. (Compl. (DE 1-1) ¶ 5). Beginning in 2021, "[d]efendant falsely reported late payments to [consumer reporting agencies]," which "caus[ed] credit denials." (Id. ¶ 8). "Defendant closed [p]laintiff's legitimate credit card account . . . without written notice or justification" in February 2022. (Id. ¶ 7). Subsequently, from April through July 2022, "[d]efendant placed 50 calls to [p]laintiff's phone number at inconvenient times (e.g., during work hours, family events, and repeated back-to-back calls)," and "sent 27 harassing emails demanding payment on fraudulent accounts, including threats to report [p]laintiff to credit agencies." (Id. ¶ 6 (emphasis omitted)). Plaintiff alleges the

---

[2] Although initially filed without supporting memorandum, (see DE 7), defendant cured this deficiency by filing the instant motion (DE 13) and memorandum (DE 14). Defendant asks the court to take judicial notice of prior action between the parties, Rhodes v. Navy Federal Credit Union, No. 5:23-cv-307-FL. Such notice is not necessary for resolution of the instant motions.

2

calls were "made with intent to annoy," and the emails "us[ed] false representations to intimidate [p]laintiff." (<u>Id.</u>). Additionally, at unspecified times "[d]efendant disclosed [p]laintiff's nonpublic information to third parties without consent," (<u>id.</u> ¶ 9), and "ignor[ed] written correspondences from the plaintiff," (<u>id.</u> ¶ 18).

"Plaintiff suffered severe anxiety, humiliation, and sleeplessness due to [d]efendant's harassment, false credit reporting, and refusal to correct errors." (<u>Id.</u> ¶ 10). She also "spent over 250 hours writing dispute letters, negotiating with [d]efendant, and repairing credit." (<u>Id.</u>).

## COURT'S DISCUSSION

A.      Motion to Remand

Plaintiff challenges defendant's invocation of this court's diversity jurisdiction and argues the notice of removal is void as procedurally defective and untimely. The court addresses each argument in turn.

The right to remove a case from state to federal court derives from 28 U.S.C. § 1441, which provides in relevant part: "[A]ny civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant." 28 U.S.C. § 1441(a). District courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States." <u>Id.</u> § 1332(a)(1). In any case removed from state court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." <u>Id.</u> § 1447(c). "[I]t is the defendant who carries the burden of alleging in his notice of removal and, if challenged, demonstrating the court's jurisdiction over the matter." <u>Strawn v. AT&T Mobility LLC</u>, 530 F.3d 293, 296 (4th Cir. 2008).

Defendant here has carried its burden. The notice of removal clearly alleges diversity of

3

citizenship and satisfaction of the amount in controversy requirement. (<u>See</u> Not. Rem. (DE 1) ¶¶ 12, 15). A federally chartered credit union, such as defendant, is a citizen of the state where it has its principal place of business. <u>Navy Fed. Credit Union v. LTD Fin. Servs., LP</u>, 972 F.3d 344, 364 (4th Cir. 2020). Defendant asserts its principal place of business is in Virginia, and plaintiff does not challenge this assertion. Nor does plaintiff challenge the assertion that she is a citizen of North Carolina. Finally, the amount in controversy must be determined from the allegations or prayer of the complaint. <u>St. Paul Mercury Indem. Co. v. Red Cab Co.</u>, 303 U.S. 283, 289 (1938); <u>see</u> 28 U.S.C. § 1446(c)(2) ("the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy"). Thus, although plaintiff argues her claim for $250,000.00 in punitive damage is speculative, she has placed that amount in controversy by demanding it in her complaint. <u>See id.</u> Therefore, where the parties are diverse and the amount in controversy exceeds $75,000.00, diversity jurisdiction exists.

Plaintiff's argument for application of the "forum defendant rule" is inapposite. An action removed solely on the basis of diversity "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). Where this action was brought in North Carolina, and defendant is, as discussed above, a citizen of Virginia, this rule does not apply to this matter. Defendant's operation of branches in North Carolina does not make it a North Carolina citizen. <u>See Wachovia Bank v. Schmidt</u>, 546 U.S. 303, 317 (2006) ("For purposes of diversity, a corporation surely is not deemed a citizen of every State in which it maintains a business establishment."). Thus, no forum defendant exists to preclude removal.

Turning to plaintiff's procedural arguments, a removing defendant must file "a notice of removal . . . containing a short and plain statement of the grounds for removal, together with a

4

copy of all process, pleadings, and orders served upon such defendant . . . in such action." 28 U.S.C. § 1446(a). "Promptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal." Id. § 1446(d). The record indicates defendant has complied with these requirements. (See Not. Removal (DE 1); State Filings (DE 1-1); Not. Filing Not. Removal (DE 11-1)).

In this district, "[a]ny party who files a notice of removal shall file with the notice a civil cover sheet [and] a supplemental removal cover sheet." Local Civil Rule 5.3(a)(1). As evidenced on the docket, defendant did not attach these documents to its April 21, 2025, notice of removal. However, upon notification by the clerk, defendant corrected this deficiency April 29, 2025.

Plaintiff has not directed the court to any case within this circuit remanding an action to state court for failure to comply with a local rule, or any case within this district voiding a notice of removal for failure to comply with Local Rule 5.3(a) in particular. Where defendant promptly cured its deficiency by filing the required cover sheets April 29, 2025, and where plaintiff has not demonstrated any prejudice caused by the short delay, defendant's notice of removal is not procedurally void.

Plaintiff's argument as to timeliness of removal also fails. Defendant was served with summons and copy of complaint March 21, 2025. (Not. Removal (DE 1) ¶ 2; Aff. Serv. (DE 16-1) at 2). Plaintiff concedes defendant's April 21, 2025, notice of removal was timely filed within 30 days of service of process. (Am. Mot. Remand (DE 16) at 2); see 28 U.S.C. § 1446(b)(1). However, plaintiff argues that defendant's April 29, 2025, filings constituted a "second removal," which was untimely. The court disagrees. The cover sheets filed April 29, 2025, (DE 9, 11), are administrative documents that do not operate as a notice of removal. The only notice of removal

5

in this matter, documented at docket entry 1, was timely filed April 21, 2025.

In sum, defendant has carried its burden of demonstrating this court's jurisdiction over this action, and its notice of removal is not void for procedural defects or untimeliness. Therefore, remand is not warranted.

B.      Motion to Dismiss

1.      Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

2.      Analysis

Defendant argues that each of plaintiff's claims fail because they either do not assert a cognizable cause of action or they do not include sufficient facts to state a plausible claim for relief. The court addresses each claim in turn.

a.      Unfair and Deceptive Trade Practices (Count One)

Defendant argues plaintiff's complaint fails to state a plausible claim for violation of the UDTPA. Under the UDTPA, "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen.

Stat. § 75-1.1(a). "In order to establish a violation of N.C.G.S. § 75–1.1, a plaintiff must show: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs." Walker v. Fleetwood Homes of N.C., Inc., 362 N.C. 63, 71-72 (2007). "Whether an act or practice is unfair or deceptive under the UDTPA is a question of law for the court." Champion Pro Consulting Grp., Inc. v. Impact Sprots Football, LLC, 845 F.3d 104, 109 (4th Cir. 2016). An act is unfair if "it offends established public policy," or if it "is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Marshall v. Miller, 302 N.C. 539, 548 (1981). A practice is deceptive when "it has the capacity or tendency to deceive." Walker, 362 N.C. at 72.

Here plaintiff alleges "[d]efendant mailed [p]laintiff commercial solicitations lacking the mandatory notice under N.C. Gen. Stat. § 75-38, which requires 'THIS IS A SOLICITATION' on the exterior," and "[d]efendant placed 50 calls to [p]laintiff's phone number at inconvenient times (e.g., during work hours, family events, and repeated back-to-back calls)." (Compl. (DE 1-1) ¶¶ 5, 6). Taking these allegations as true, they do not amount to unfair or deceptive acts. First, the statute plaintiff cites prohibits "excessive pricing during states of disaster, states of emergency, or abnormal market disruptions," and does not address any requirements for commercial solicitations. N.C. Gen. Stat. § 75-38. Second, although plaintiff states the mailers were "deceptive," such allegation is conclusory. (Compl. (DE 1-1) ¶ 11). She does not provide any additional facts indicating how the mail had any "tendency to deceive." Walker, 362 N.C. at 72.

Thus, where plaintiff does not allege that defendant engaged in an unfair or deceptive practice, she fails to state a plausible claim under the UDTPA.

b.     Violation of Telephone Solicitation Act (Count Two)

The North Carolina Telephone Solicitation Act, N.C. Gen. Stat. § 75-101 et seq. (the

7

"Act"), contains a variety of restrictions on telephone solicitors.  However, none of the conduct identified by plaintiff in her complaint is prohibited in the language of the statute.  Specifically, the Act does not prohibit calls "during working hours" or "family events," and it does not prohibit "repeated back-to-back calls," as plaintiff alleges.  (Compl. (DE 1-1) ¶ 6).  Nor does the Act prohibit "calls made with intent to annoy," as plaintiff also suggests, or contain a catch all provision to address situations not expressly set out in the statute, such as a high volume of calls.  (See id.).  Where her allegations do not give rise to a plausible inference that defendant violated any provision of the cited statute or other law, plaintiff has not stated a claim for relief under the Act.

           c.       Credit Reporting Abuse (Count Three)

Plaintiff asserts that "[d]efendant falsely reported late payments to [consumer reporting agencies], breaching N.C. Gen. Stat. § 75-61 (Credit Reporting Abuse) and causing credit denials" and other financial harm.  (Compl. (DE 1-1) ¶ 8).  The statutory section cited by plaintiff sets out definitions applicable to North Carolina's Identity Theft Protection Act, N.C. Gen. Stat. §§75-60 et seq.  Although that act does create certain causes of action, none address false credit reports.  Where plaintiff has not pointed to statutory or common law supporting a claim for "credit reporting abuse," this claim fails to state a cognizable claim.

To the extent plaintiff intends to rely on federal consumer protections, such reliance is unavailing.  The federal law obligating information furnishers to provide accurate information to consumer reporting agencies, 15 U.S.C. § 1681s-2(a), does not create a private cause of action.  Beattie v. Nations Credit Fin. Servs. Corp., 69 Fed. App'x 585, 591 (4th Cir. 2003) (noting enforcement of subsection (a) is limited to federal agencies and state officials).

Thus, where the court has found no state or federal law in support, plaintiff's claim for credit reporting abuse must be dismissed.

d.      Unlawful Account Closure (Count Four)

Relying upon N.C. Gen. Stat. § 53-176, plaintiff purports to assert a cause of action for "unlawful account closure." (Compl. (DE 1-1) ¶ 15). She alleges that in February 2022 "[d]efendant closed [p]laintiff's legitimate credit card account . . . without written notice or justification." (Id. ¶ 7).

The code section plaintiff cites falls within the North Carolina Consumer Finance Act (the "NCCFA"), which pertains to lending and the servicing of loans, not credit cards. Here, plaintiff does not allege that she is a party to a loan agreement, or that defendant violated the provisions of the NCCFA. Moreover, nothing in the NCCFA prohibits a lender from closing a customer's account or requires a lender to provide notice and justification prior to doing so.

Where plaintiff has not identified any law or other obligation requiring defendant to provide notice or justification, her claim for unlawful account closure is not a cognizable claim for which this court may grant relief.

e.      Financial Privacy Violation (Count Five)

Plaintiff alleges defendant engaged in "unauthorized data sharing" by way of "disclos[ing] [p]laintiff's nonpublic information to third parties without consent." (Compl. (DE 1-1) ¶ 9). She does not elaborate on what information was disclosed and does not identify any of the third parties to whom it was disclosed.

The statutory section plaintiff cites provides protections when a business suffers a security breach implicating consumers' personal information. See N.C. Gen. Stat. § 75-65. Plaintiff does not allege any security breach occurred, so this statute is inapplicable. However, elsewhere in her complaint plaintiff cites N.C. Gen. Stat. § 75-66, which prohibits certain publications of personal information. See id. § 75-66(a). To the extent plaintiff alleges violation of § 75-66, she fails to

9

state a claim.

"Any person whose property or person is injured by reason of a violation of [§ 75-66] may sue for civil damages." Id. § 75-66(e). Here, plaintiff makes no allegation that she was damaged or in any way affected by defendant allegedly sharing her personal data. Her unadorned statement that "[u]nauthorized data sharing warrants injunctive relief and damages," (Compl. (DE 1-1) ¶ 15), is conclusory, and any finding of injury on this count would be speculative. Therefore, plaintiff fails to state a plausible claim for financial privacy violation.

> f.     Intentional Infliction of Emotional Distress (Count Six)

Intentional infliction of emotional distress consists of: "(1) extreme and outrageous conduct by the defendant, (2) which is intended to cause and does cause (3) severe emotional distress to another." Turner v. Thomas, 369 N.C. 419, 427 (2016). "[E]xtreme and outrageous conduct is that which exceeds all bounds of decency tolerated by society and is regarded as atrocious, and utterly intolerable in a civilized community." Id. (quotations omitted). North Carolina "has set a high threshold to satisfy this element." Id.

None of plaintiff's allegations, taken as true and in the aggregate, set out conduct "which exceeds all bounds of decency." Id. Thus, where she fails to allege defendant engaged in extreme and outrageous conduct, plaintiff fails to meet the "high threshold" necessary to state a claim for intentional infliction of emotional distress, and this claim must be dismissed. Id.

## CONCLUSION

Based on the foregoing, plaintiff's motion to remand (DE 16) is DENIED, and defendant's motion to dismiss for failure to state a claim (DE 13) is GRANTED. Plaintiff's claims are DISMISSED. The clerk is DIRECTED to close this case.

10

SO ORDERED, this the 13th day of August, 2025.

_____
LOUISE W. FLANAGAN
United States District Judge

11